# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00531-KDB

| | |
|---|---|
| ALLISON CHARLENE HOWARD, | |
| Plaintiff, | |
| v. | **ORDER** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 12)[1] and Defendant's Motion for Summary Judgment (Doc. No. 14), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, the Court will **DENY** Plaintiff's Motion for Judgment on the Pleadings**; GRANT** Defendant's Motion for Summary Judgment; and **AFFIRM** the Commissioner's decision.

---

[1] Local Rule 7.2 requires social security plaintiffs to file a Motion for Summary Judgment and supporting Memorandum of law. While Plaintiff's motion is styled as a "Motion for Judgment on the Pleadings," it is materially the same as a Motion for Summary Judgment and will be treated as such.

1

## I. BACKGROUND

Allison Charlene Howard applied for Title II (DIB) and Title XVI (SSI) benefits in October 2015 (Tr. 19; 317-29).[2] In both of her applications, she alleged disability beginning on September 15, 2014. (Tr. 19; 317-29). Her applications were denied at the initial and reconsideration levels on January 7, 2016 and August 18, 2016, respectively. (Tr. 19, 67-124, 125-160). Thereafter, Howard filed a written request for a hearing. (Tr. 19; 211-12). After conducting a hearing via Video Teleconference on June 25, 2018, Administrative Law Judge Daniel S. Campbell ("ALJ") denied her applications in a written decision dated July 31, 2018. (Tr. 19-30). Howard then filed for a review of the ALJ's decision with the Appeals Council (AC), which denied review on August 8, 2019. (Tr. 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Howard has requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Howard was disabled during the relevant period.[3] For the purposes of title II of the Act, "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

[3] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). At step one, the ALJ found that although Howard claimed she became disabled on September 15, 2014, she had engaged in substantial gainful activity from September 15, 2014 to December 31, 2015 while working as a nurse aid. (Tr. 21, Finding 2). Because a claimant cannot be considered disabled under title II if the claimant is engaged in substantial gainful activity, the ALJ found that Howard was not disabled during the time she worked as a nurse aid.[4] (Tr. 21-22, Finding 2). However, because there had been a continuous 12-month period during which Howard had not engaged in substantial gainful activity, the ALJ proceeded to address whether Howard was disabled during the time period after December 15, 2015. (Tr. 22, Finding 3). At step two, the ALJ found that Howard had the following severe impairments: "lumbar degenerative disc disease, cervical degenerative disc disease, bilateral carpal tunnel syndrome, obesity, anxiety disorder, and adjustment disorder/depression." (Tr. 22, Finding 4). The ALJ considered Howard's impairments under the listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) at step three and found that they did not meet or medically equal any listing. (Tr. 33, Finding 4).

At step four, the ALJ found that Howard had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967(a) except:

> the claimant can frequently handle, finger, or feel bilaterally. She can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around moving mechanical parts. She can never crawl.

---

[4] Howard testified that she worked as a nurse aid for 40 hours a week, earning nine dollars an hour. The earnings records indicate that she earned $15,328.17 in 2014 and $14,074 in 2015, thereby making her monthly average earnings presumptive substantial gainful activity under the disability regulations. CFR §§ 404.1574. 416.974. A claimant who is working and earning wages above the substantial gainful activity level cannot be considered disabled under the Act regardless of his or her medical condition.

3

> She can perform simple, routine tasks with simple work-related decisions and no more than occasional changes in a routine work setting. She can have frequent interaction with coworkers and supervisors, but only occasional interaction with the general public.

(Tr. 24, Finding 6). With these limitations, the ALJ found that Howard was unable to perform her past relevant work as a nurse aide. (Tr. 28, Finding 7). Finally, the ALJ considered Howard's age, education, work experience, and RFC, and concluded that she could perform other jobs that exist in significant number in the national economy, such as a document preparer (DOT # 249.587-018), final assembler (DOT # 713.687-018), and sorter (DOT # 521.687-086). (Tr. 29). Accordingly, the ALJ found that Howard had not been under a disability from September 15, 2014 to the date of his decision. (Tr. 30, Finding 12).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Howard argues that the ALJ's decision should be reversed and remanded based on two assignments of error. First, Howard asserts that the ALJ failed to incorporate nonexertional limitations on her ability to stay on task in the RFC or explain why such a limitation was not necessary. Second, Howard contends that the ALJ failed to discuss facts in evidence that contradicted his conclusions.

A. <u>The ALJ properly accounted for Howard's ability to stay on task.</u>

During step three, the ALJ found that Howard was moderately impaired in maintaining concentration, persistence, and pace. (Tr. 23). At the hearing on June 25, 2018, the ALJ proposed hypothetical questions to the VE that limited the individual to performing "simple, routine tasks with simple, work-related decisions. And no more than occasional changes in a routine work setting. The individual could have frequent interaction with coworkers and supervisors, and only

5

occasional interaction with the general public." (Tr. 62). In his final, written decision, the ALJ limited Howard to "simple, routine tasks with simple work-related decisions and no more than occasional changes in a routine work setting. She can have frequent interaction with coworkers and supervisors, but only occasional interaction with the general public." (Tr. 24).

Howard cites to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) as a basis for remand. She argues that the ALJ failed to explain why her moderate limitations in concentration, persistence, and pace did not result in further limitations in her RFC. At the hearing, counsel for Howard asked the VE whether a person who was off-task 15 percent of the day, outside of regular breaks, could still perform the three identified jobs. (Tr. 65). The VE responded that there would be no work available with that added limitation. Thus, if Howard's limitations in concentration, persistence, and pace are as severe as she asserts, there would be no work available for her.

In *Mascio*, the ALJ found that the claimant was moderately impaired in the ability to maintain concentration, persistence, or pace and limited the claimant to simple, routine tasks or unskilled work in the RFC. The Fourth Circuit held that the ALJ erred by ignoring the claimant's moderate limitation in the ability to maintain concentration, persistence, or pace in creating the RFC. The court noted that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Mascio*, 780 F.3d at 638.

An ALJ may still, however, assign claimants limitations to merely simple, routine tasks or unskilled work in the wake of a moderate concentration, persistence, or pace limitation. *Id.; see also Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). So long as the ALJ does not ignore the claimant's limitation in concentration, persistence, or pace and explains why further limitations in the RFC are not warranted, the ALJ satisfies his duty under *Mascio*. *See Shinaberry*, 952 F.3d at

6

121. For example, "'when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the [RFC] to include only unskilled work sufficiently accounts for such limitations.'" *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

Here, the ALJ discussed in detail why the evidence did not "support the existence of limitations greater than those reported in" the RFC. (Tr. 25-28). He considered that throughout 2015, Howard worked at the substantial gainful activity level despite her continued chiropractic care for her lumbar degenerative disc disease and symptoms from depression and anxiety. (Tr. 25). Further, Howard stated at the hearing that she worked up until September 2016, although it was not at the substantial gainful activity level. The ALJ also considered Howard's daily activities that required some level of concentration, such as attending church, playing games on her phone, shopping in stores, cooking, and watching television. (Tr. 23).

The ALJ then went on to explain why the objective medical evidence did not require further limitations than those outlined in the RFC. He considered Howard's November 2014 examination in which she was noted to have anxiety and depressive disorders, but "retained unimpaired memory, linear thought process, and fair judgment." (Tr. 26). The ALJ went on to discuss medical findings in the years following her substantial gainful activity:

> Later, in June 2016, the claimant complained of an anxiety attack (Exhibit 14F, 281-291). Subsequently, in November 2016, the claimant began receiving treatment for stress, depression, and anger. She was found to have moderate major depressive disorder and prescribed Xanax and Lexapro. Examination findings show that the claimant retained average intellectual functioning, good judgment, good insight, focused attention and concentration, normal strength of thought, and normal thought content (Exhibit 23F). The longitudinal medical evidence in 2017 and 2018 shows minimal complaints related to mental impairments. Thus, based on the evidence of record, the [undersigned] finds that the claimant can perform simple, routine tasks with simple work-related decisions and no more than occasional changes in a routine

7

Case 3:19-cv-00531-KDB   Document 17   Filed 05/06/20   Page 7 of 12

work setting. Furthermore, due to her anxiety symptoms, the claimant should have only occasional interaction with the public and she is limited to frequent interaction with coworkers and supervisors.

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3) & 416.929(c)(3) also lead to a conclusion that the claimant's subjective allegations are not consistent with the evidence of record, and that the residual functional capacity finding in this case is justified.

(Tr. 26-27).

The ALJ also discussed in detail the psychological evaluations performed by the SSA psychological consultants and Dr. Brantley, a consultative psychologist who examined Howard in 2014. (Tr. 27). Dr. Brantley opined that Howard only had "mild impairment of the ability to tolerate daily stress and pressures of work activity" and that she had the ability to concentrate well enough to perform simple, repetitive tasks. (Tr. 27, 489). The ALJ gave considerable weight to Dr. Brantley's opinion because it was "consistent with the claimant's work activity despite impairments and it is supported by Dr. Brantly's [sic] findings along with the claimant's minimal treatment since stopping work activity at the end of 2015." (Tr. 27).

The RFC conclusions by SSA consultants Dr. Barham and Dr. Grover support the ALJ's finding of "not disabled." While both SSA consultants opined that Howard had moderate difficulties in maintaining concentration, persistence, or pace, they still concluded that she could perform simple, routine tasks in a stable, low pressure setting with a low level of interpersonal demands. Moreover, both SSA consultants found that Howard had no episodes of decompensation over an extended duration. The ALJ gave considerable weight to these opinions, to the extent they were consistent with the RFC, because they were consistent with Howard's work activity despite her impairments and supported by examination findings, along with Howard's minimal treatment since she stopped work activity at the end of 2015.

Much of Howard's argument focuses only on the ALJ's discussion of the "paragraph B criteria," where the ALJ first found that Howard had moderate limitation in the ability to maintain concentration, persistence, or pace. However, Howard fails to address the ALJ's lengthier discussion of the medical evidence at step four where he explained his RFC determination. Even in his discussion of the "paragraph B criteria," the ALJ refers to evidence explained later in his opinion. (Tr. 23) ("Therefore, based on the evidence of record and further discussed below, the undersigned finds that the claimant has . . . moderate restriction with regard to concentrating, persisting, or maintaining pace . . . ."). The Court "must read the ALJ's decision as a whole," and findings in one step can support findings in other steps of the analysis. *See Keene v. Berryhill*, No. 17-1458, 2018 WL 2059514, at *3 (4th Cir. May 2, 2019). Thus, when looking to see whether the ALJ properly explained the RFC, the Court is not limited to looking only at the ALJ's discussion of the "paragraph B criteria" during step three of his analysis.

Howard also argues that her work activity prior to 2016 "has no bearing on her ability to work after September 2016." (Doc. No. 13, at 19). While Howard is correct that just because she was working prior to 2016 does not mean that she is not disabled now, the ALJ simply noted that she was complaining of similar impairments during the time she was working and that the medical evidence shows that those impairments have not substantially worsened.

In sum, the ALJ addressed Howard's moderate limitations in concentration, persistence, or pace and properly explained why the medical evidence supported an RFC that limited Howard to simple, routine tasks. The ALJ referenced the various medical records that showed there was no need for a limitation in concentration, persistence, or pace and that Howard was capable of performing simple, routine tasks. His explanation is supported by the record. Accordingly, this

9

Court holds that the ALJ's findings and mental limitations included in the RFC are sufficiently explained as required under *Mascio*.

B. The ALJ's RFC determination is supported by substantial evidence.

Howard's next contention of error is that the ALJ ignored evidence contrary to his conclusions. Howard points to Exhibit 23F, a report of a one-time comprehensive clinical assessment noting that Howard had severe mood disturbance, severe anxiety, severe impairment of activities of daily living, and moderate impairment of thinking/cognition/memory, impulsivity, and recklessness and aggression. (Tr. 1569). In determining a claimant's RFC, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (internal quotations omitted) (citation omitted). "While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." *Brewer v. Astrue*, No. 7:07-cv-00024, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) (citing to *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Additionally, these notations were made on a check-box form with no explanation as to why the boxes were checked.[5] Check-box or fill-in-the-blank forms are entitled to little weight because they are not supported by objective evidence in the record as required under 20 C.F.R. § 404.1527.

---

[5] Howard claims that the form is more than a check-box form and includes explanation and support for the doctor's findings. While there are some spaces for narrative description, any narrative portions of the assessment merely report what Howard claimed her symptoms were at the time. Such evidence is entitled to little weight. *See Owen v. Colvin*, No. 1:15-cv-115, 2016 WL 4373702, at *7 (W.D.N.C. Aug. 15, 2016) ("The Fourth Circuit has held that an ALJ may give the medical opinion of a treating physician little weight if the opinion is based on the subjective complaints of the patient without sufficient evidence to substantiate their claims.").

10

*See, e.g.*, *Shannon v. Berryhill*, No. 1:17-cv-66, 2018 WL 1567368, at *4 (W.D.N.C. Mar. 30, 2018); *Williams v. Colvin*, No. 1:14-cv-18, 2015 WL 1000321, at *7 (W.D.N.C. Mar. 6, 2015). Such forms are "weak evidence at best." *Shannon*, 2018 WL 1567368, at *4 (quoting *Shelton v. Colvin*, 2015 WL 1276903, at *3 (W.D. Va. Mar. 20, 2015)).

Howard also cites to various medical records in the transcript, which she claims show significant deterioration in her physical symptoms. However, these records are not as supportive as Howard's suggests. Most of the medical records describe Howard's conditions as mild to moderate, and the ALJ properly accounted for these limitations by restricting her to sedentary work in the RFC.[6]

Moreover, it is the claimant's burden to establish how any medically determinable impairments affect functioning. *See* 20 C.F.R. §§404.1512(c), 416.912(c); *see also, e.g.*, *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); *Plummer v. Astrue*, No. 5:11-cv-06-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC.") (citing *Stormo*), *adopted*, 2012 WL 1858844 (May 22, 2102), *aff'd*, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Howard has failed to establish that her medically determinable impairments affect her functioning as she alleges.

---

[6] The ALJ even accorded "reduced weight" to SSA physical consultants Dr Jimenez-Medina and Dr. Linster, who found that Howard could "work at a reduced range of the medium exertional level with reduced postural activities." (Tr. 27). The ALJ decided to further reduce the exertional level to sedentary to account for Howard's physical symptoms.

11

For these reasons, the Court holds that there is substantial evidence to support the ALJ's RFC determination.

## IV. CONCLUSION

The decision of the ALJ, therefore, is hereby **AFFIRMED**, Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 12) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED.**

**SO ORDERED.**

Signed: May 6, 2020

Kenneth D. Bell
United States District Judge